IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| BONNIE F. WASSERMAN, ) | CIVIL ACTION NO. 9:08-3842-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. Plaintiff applied for Disability Insurance Benefits (DIB) on March 23, 2000, alleging disability as of January 4, 1993 due to hypertension, diabetes, a panic disorder, depression, anxiety, and fatigue. (R.pp. 54-56, 66).

Plaintiff's claim was denied initially and upon reconsideration. The Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on November 28, 2001. (R.pp. 21-36). At the administrative hearing, Plaintiff amended her alleged disability onset date to October 1995. (R.p. 24). The ALJ thereafter denied Plaintiff's claim in a decision issued December 21, 2001. (R.pp. 14-19). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 6-8).



Plaintiff then filed a civil suit in the United States District Court. <u>Wasserman v. Barnhart</u>, Civil Action No. 0:03-2855. On September 20, 2004, the undersigned issued a Report in that case recommending remand of the matter under Sentence Four of 42 U.S.C. § 405(g) for further administrative proceedings, and in particular consideration by the ALJ of the opinions of Plaintiff's treating physician that her impairments were of disabling severity during the relevant time period. An Order of remand was issued on October 15, 2004 by the Honorable R. Bryan Harwell, United States District Judge. The original decision was then vacated, and the case was remanded to the ALJ for further proceedings. (R.pp. 199-200).

A second administrative hearing was held on May 17, 2005. (R.pp. 231-250). The ALJ thereafter denied Plaintiff's claim in a decision issued March 23, 2006. (R.pp. 182-189). The Appeals Council again denied Plaintiff's request for a review of the ALJ's decision, thereby making the March 23, 2006 determination of the ALJ the final decision of the Commissioner. (R.pp. 168-170).

Plaintiff then filed this action in United States District Court. Plaintiff asserts in her <u>pro se</u> Complaint that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

**Scope of review**

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate



conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)).

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a Defendants' Exhibit novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## Discussion

A review of the record shows that Plaintiff, who was forty-seven (47) years old when she alleges her disability began, has a high school education with past relevant work experience as a word processor/data entry clerk and secretary. (R.pp. 24, 54, 67, 72). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and

3



which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. Further, it is undisputed that Plaintiff last met the special earning requirements of the Social Security Act on December 31, 1998; therefore, in order to be eligible for DIB, she must establish that she was disabled on or before that date. (R.p. 183); see Everett v. Secy. of Health, Ed. and Welfare, 412 F.2d 842, 843 (4th Cir. 1969); 42 U.S.C. § 423(c).

After review of the evidence and testimony in the case, the ALJ determined that, although through the date last insured Plaintiff was suffering from the severe impairments[1] of hypertension, non-insulin dependent diabetes mellitus, and allergic rhinitis, she nevertheless retained the residual functional capacity to perform her past relevant work as a secretary and work processor/data entry clerk, and was therefore not entitled to DIB at any time through December 31, 1998, the date last insured. (R.pp. 185, 187-189). Plaintiff asserts that in reaching this decision, the ALJ erred by failing to give proper weight to the opinion of Plaintiff's treating and consultative physicians, and by finding that Plaintiff could return to her past relevant work even though she suffers from non-exertional impairments that preclude her return to her past relevant work. However, after careful review and consideration of the arguments and evidence presented, the Court finds that there is substantial evidence in the record to support the conclusion of the ALJ that Plaintiff was not disabled as that term is defined in the Social Security Act during the relevant time period, and that the decision must therefore be affirmed.

The medical evidence from the relevant time period shows that Plaintiff received treatment from Dr. Percy George beginning in the fall of 1995. Plaintiff was initially seen for

---

[1]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).

4



complaints of hypertension, but was not on any medication at that time. Plaintiff was diagnosed with high blood pressure, moderately severe, and diabetes mellitus. (R.p. 159). Plaintiff continued to be seen by Dr. George thereafter, with his office notes generally reflecting that Plaintiff was doing well and getting "plenty of activity". (R.pp. 155-157). In November 1996, Plaintiff was found to be suffering from a bronchial irritation, for which she was placed on a short course of Prednisone. (R.p. 154). Dr. George began Plaintiff on blood pressure medication in early 1997. Plaintiff experienced no problems engaging in an exercise program, and by the fall of 1997 continued to be described by Dr. George as "doing pretty well." (R.pp. 149-153).

In March 1998, Dr. George referred Plaintiff to Dr. William Davis, an allergist, with respect to Plaintiff's complaints of nasal congestion and coughing spells. Dr. Davis noted Plaintiff's medical history as consisting of borderline diabetes and hypertension for which she took medication. A physical examination was unremarkable, and Dr. Davis found Plaintiff's complaints to be "most consistent with perennial and seasonal allergic rhinitis with resultant post nasal drip causing throat irritation and cough". Plaintiff was prescribed medications for this condition and released. (R.pp. 147-148). Plaintiff was also seen in June 1998 by Dr. Stephen Imbeau, who noted that Plaintiff had chronic sinusitis. Plaintiff continued thereafter to be seen by Dr. Imbeau through March 1999, with his office notes reflecting that she continued to receive therapy for her allergic rhinitis. (R.pp. 222-223).

Plaintiff returned to see Dr. George in October 1998, at which time he opined that he was sure that Plaintiff had a mild broncho spastic disorder. He also noted that Plaintiff "continue[d] to have [a] mild panic disorder". A physical examination was "totally unremarkable with exception

5



of her blood pressure", and Plaintiff was continued on her medications, including a discontinuation of Ativan (an anxiety medication) in favor of Valium. (R.p. 145). Plaintiff's insured status thereafter expired on December 31, 1998, meaning she was no longer eligible for DIB after that time absent a previous finding of disability.

Plaintiff's medical records reflect that she continued to be followed by Dr. George in early 1999, with Dr. George noting that her "sugars have actually been running pretty well" even though she had "blown her diet in California and Las Vegas". On April 28, 1999, her blood sugars were again found to be doing well, although her blood pressure was still elevated. Plaintiff was continued on medications. (R.pp. 143-144). In a follow up appointment in July 1999, Plaintiff was in "fairly good spirits". Plaintiff reported that she was taking a little Valium at night for rest, which she stated also "mellowed her out a little bit during the day". A cardiovascular exam was unremarkable, Plaintiff's chest was clear, and she was continued on her medications. (R.p. 142). On October 28, 1999, Plaintiff reported that she was "not resting well" at night, and she switched her Diazepam prescription to 15 mg to take at bedtime. (R.p. 141).

On her next visit to Dr. George on February 3, 2000 (now over a year after her insured status had expired), Plaintiff was "feeling pretty well", although she was noted to be "somewhat anxious" concerning surgery she was supposed to have for an ovarian mass in the next couple of weeks. (R.p. 139). Nevertheless, when she was next seen by Dr. George in May 2000 following her surgery, she was again noted to be "doing pretty well". Plaintiff's weight was down, her blood pressure was under much better control, and her sugars had also "been doing pretty well." Plaintiff was continued on her medications at that time. (R.p. 140).



Plaintiff went to see Dr. Marshall Staton on June 20, 2000 for a consultative examination. Plaintiff told Dr. Staton that she felt "scared all the time". Plaintiff also told Dr. Staton that she had experienced stress as far back as 1985 due to family problems, although she reported that she had never had any psychiatric treatment "except for one visit in Arizona in 1993". Plaintiff complained of feeling depressed most of the day, that she found it hard to concentrate, and that most mornings she experienced a "paralyzing fear" lasting four or five hours. Plaintiff told Dr. Staton that she believed she was unable to work because she could not face going out of the house or looking at people. Dr. Staton reported that Plaintiff seemed "generally hostile", and noted that Plaintiff stated that she had been fired from several jobs due mostly to conflicts with supervisors. Dr. Staton performed a mental status examination and then opined that Plaintiff had a marked constriction of interests and restriction of activities in her ability to relate, and in her ability to attend to and persist to completion of tasks, indicating that she could not focus on a simple task for as long as two hours at a time. Dr. Staton diagnosed Plaintiff with major depression, recurrent, and anxiety disorder not otherwise specified; a personality disorder not otherwise specified; hypertension by history; diabetes mellitus by history; and obesity. (R.pp. 114-116).

Plaintiff returned to see Dr. George on August 8, 2000, at which time he noted that her blood pressure was "still slightly elevated". Plaintiff complained that the Valium she was taking was not controlling her panicky feeling in the morning when she woke up. Dr. George changed Plaintiff's medications and stated he would see her back in three months. (R.p. 138). When he next saw the Plaintiff on November 7, 2000, she reported that she had been "pretty stable lately" with no unusual stress, and that her blood pressure had been under better control. Plaintiff was diagnosed

7



with high blood pressure, under control, mild diabetes, and obesity. (R.p. 137).

After a review of Plaintiff's medical records, a state agency physician, Dr. Donald W. Hinnant, opined in a psychiatric review technique form completed on September 1, 2000, that Plaintiff had a slight restriction in her activities of daily living and maintaining social functioning, and in maintaining concentration, persistence or pace, and that she might experience episodes of deterioration or decompensation in work or work like settings "once or twice". A second state agency physician, Dr. Herbert Gorod, reviewed Plaintiff's medical records on November 6, 2000 and concurred in the findings of the earlier physician. (R.pp. 117, 124).

On December 5, 2000, Dr. George issued a medical statement wherein he opined that Plaintiff suffers from severe essential hypertension, adult onset diabetes mellitus, chronic musculoskeletal pains, and severe depression with a strong anxiety component and phobic manifestations. Dr. George further opined that Plaintiff had "significant panic disorder" associated with her anxiety, that she is "unable to cope with any stressful situations whatsoever", and has an "inability to attend to the simplest task for any period of time." He opined that Plaintiff was only reasonably well controlled on medications, and that she had been in counseling off and on for at least seven to eight years, although she at present refused any further counseling. Dr. George opined that Plaintiff's "severe impairment related to the above illnesses" had lasted for at least twelve months, and would "certainly continue to the next 12 months and maybe the rest of her life." Although Dr. George did not begin seeing the Plaintiff until 1995, he opined that Plaintiff was unable to engage in substantial gainful employment and had not been able to do so since October 1992. He stated that, if anything, Plaintiff's condition seemed to have worsened in the last year, and that in his opinion

8



Plaintiff was totally and permanently disabled from any gainful employment. (R.pp. 135-136).

Notwithstanding this dire opinion and diagnosis, however, when Plaintiff saw Dr. George on her regularly scheduled visit in February 2001, he found her to be "overall feeling pretty well" and "in good spirits". Her blood pressure was found to be under good control, as was her sugar. Plaintiff was diagnosed with high blood pressure, controlled, and diabetes, controlled. No notation was made about depression or anxiety. (R.p. 134). When Plaintiff returned to see Dr. George on April 20, 2001, her blood pressure was again under good control, and she reported to generally feeling pretty well, although she had a pain in her right neck. Plaintiff was diagnosed with high blood pressure, under good control, and right neck pain. (R.p. 133). Plaintiff returned to see Dr. George on July 20, 2001, at which time her blood pressure remained under fair control. Plaintiff complained of being "still depressed and chronically tired", and was diagnosed with high blood pressure, diabetes, and severe depression, "fairly well controlled at present". (R.p. 132). On October 24, 2001, Plaintiff was again in "pretty good spirits" with her blood pressure under good control. It was noted that Plaintiff had "no other acute or unusual problems", and that she was taking Clonazepam at bedtime for chronic anxiety and sleep and had "done well on that". Plaintiff was diagnosed with high blood pressure, diabetes, and chronic anxiety, stable. (R.p. 131).

On February 19, 2002, Dr. George issued a statement opining that Plaintiff met the requirements of listing 12.04 (affective disorders) and 12.06 (anxiety related disorders).[2] (R.pp. 160-161). However, Dr. George's progress notes following that day and continuing into 2004 continued

---

[2]In the Listings of Impairments, "[e]ach impairment is defined in terms of several specific medial signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). A claimant is presumed to be disabled if their impairment meets the criteria of an impairment set forth in the Listings. See 20 C.F.R. §§ 416.925, 416.926 (2003).

9



to reflect his earlier findings, in particular that her ailments were under control, and that she was generally "pretty stable" and "in good spirits". (R.pp. 226-230). An undated statement from Dr. George, but submitted as part of the records, discusses generally the medications Plaintiff is receiving, and also notes that most of Plaintiff's "discussions and treatments have not been in the office . . . but over the telephone with her and her husband." This statement further reflects Dr. George's opinion that Plaintiff has had moderate to moderately severe high blood pressure and adult onset non-insulin dependant diabetes mellitus, as well as problems with significant chronic anxiety and depression. (R.p. 130).

Other evidence considered by the ALJ were some reports of agency contacts in 2000 with Plaintiff's husband, who reported that Plaintiff was suffering from anxiety and panic attacks, rarely going out, but also noting that she "reads at night" and that they would have to reschedule a June visit because they were going to California for a week for a wedding. (R.pp. 87-89). The record also contains an affidavit from a rehabilitation counselor, John Winn, dated November 15, 2001, in which he attests that he was a vocational counselor and evaluator with the South Carolina Vocational Rehabilitation Department, where he counseled and evaluated the Plaintiff during 1995 and 1996. Winn attests that stress related problems had caused an inability in the Plaintiff to communicate and interact with her coworkers and the general public, and that she failed to exhibit even minimal skills to afford a return to work. (R.p. 164). A "Vocational Assessment Profile" authored by Winn on February 18, 2002 states that during 1995 and 1996 Plaintiff exhibited poor test taking skills, and that her difficulty performing tasks "debilitated her ability to function in an average employment environment", including "even the most sedentary tasks". (R.p. 162). At the hearing, Plaintiff



testified that although Dr. George had treated her anxiety with medication, he had not recommended any therapy or hospitalization. She also testified that her blood pressure was "pretty good", but that even while on anxiety medication she did not leave her house between 1995 and 1998 apart from doctors appointments and a few visits to her husband in the hospital and occasionally to her mother in Columbia. While Plaintiff testified that her problems with allergies eventually "got cured", she complained that she was unable to sit for more than fifteen minutes at a time due to arthritic back pain. See generally, R.pp. 33-35, 234-237.

The ALJ reviewed Plaintiff's medical history as well as her subjective testimony and found that through the date last insured Plaintiff retained the residual functional capacity to perform light work with the additional limitations of no work involving dust, pollens, or fumes. (R.p. 187). In reaching this decision, the ALJ considered the opinions and records of Plaintiff's medical providers, including the opinions and records of Dr. George which postdated the expiration of Plaintiff's eligibility for DIB. While the ALJ concedes that Plaintiff's condition may have worsened after the expiration of her date last insured in December 1998, he found that Dr. George's treatment notes "simply failed to establish the presence of a severe mental impairment and failed to substantiate the doctor's finding that her condition met the requirements of Listing 12.04 and 12.06 at that time." The ALJ specifically noted that Plaintiff's treatment notes for the relevant time period generally reflected that Plaintiff was doing well, and fail to even contain any reference to anxiety or depression until October 1997, when Plaintiff received a prescription for Paxil, with the only other reference to this condition prior to the expiration of her insured status being in October 1998, when Dr. George diagnosed Plaintiff with a "mild panic disorder". However, it was noted that on Plaintiff's next visit to Dr. George, in January 1999 (after the expiration of her insured status), it was reported that



Plaintiff had "blown her diet in California and Las Vegas", reflecting her ability to travel and which the ALJ found was "completely inconsistent with depression and anxiety of Listing level".

The ALJ therefore determined that Dr. George's statements of a more severe mental condition dating from December 2000 and February 2002 were "completely unsupported by the objective evidence of record, including [Dr. George's] own treatment notes and the [Plaintiff's] admissions regarding her ability to travel . . . ." He therefore afforded those opinions virtually no weight. (R.pp. 186-187). See Craig v. Chater, 76 F.3d 585, 591-96 (4th Cir. 1996)[A treating physician's opinion is entitled to controlling weight only if it is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record]; List v. Apfel, 169 F.3d 1148, 1149 (8th Cir. 1999)[Retrospective medical opinions that are not corroborated by other evidence in the record have little relevance in determining whether an individual was disabled at an earlier time]; see also Onstead v. Sullivan, 962 F.2d 803, 805 (8th Cir. 1992) [ALJ properly discounted physician's opinion made after expiration of claimant's insured status]. As a result, the ALJ found that Plaintiff's mild panic disorder resulted in no restrictions in her ability to perform activities of daily living, only mild restrictions in her ability to maintain social functioning, with no degree of limitation in her ability to maintain concentration, persistence or pace prior to the expiration of her date last insured, and that her mental condition was therefore a non-severe impairment prior to that date. Id. Bowen, 482 U.S. at 140-142 [Impairment is "severe" only if it "significantly" limits a claimant's ability to do basic work actions].

The Court can find no reversible error in the ALJ's findings and conclusions. The medical records prior to December 1998 fail to reflect any mental impairment of a disabling severity, nor is there any record that Plaintiff sought any psychological or psychiatric treatment for anxiety or



panic attacks during the relevant time period. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ["[A] psychological disorder is not necessarily disabling. There must be a showing of related functional loss"]. While Plaintiff argues in her brief that Dr. George's opinion as to the nature and extent of her impairment during the relevant time period should have been accepted, the ALJ was entitled to base his decision on all of the relevant evidence and record, and adequately explained his rationale for why he reached the decision he did. See Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence].[3]

Plaintiff further argues that the ALJ erred in determining that she could return to her past relevant work as a data entry clerk or secretary, because the evidence showed that she suffered from non-exertional impairments that would preclude her return to her past relevant work; i.e., severe depression with a strong anxiety component and phobic manifestations, with significant panic disorder associated with this condition. However, as previously noted, the ALJ did not find that Plaintiff's depression and anxiety were a severe impairment prior to the date last insured, which also included a specific finding that Plaintiff's subjective testimony as to the extent and nature of her limitations lacked credibility when compared with the objective medical evidence of record. Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976)

---

[3]Plaintiff also complains in her brief that the ALJ did not consider the results of Dr. Staton's consultative psychiatric evaluation from June 2000. However, the opinion proffered as a result of that evaluation was of Plaintiff's condition as of June 2000. No where in this opinion does Dr. Staton relate Plaintiff's condition back to 1998 or earlier. Therefore, no specific discussion or evaluation of this opinion by the ALJ was required, and it is not reversible error for the ALJ to have failed to do so. List, 169 F.3d at 1149; Amstead, 962 F.2d at 805.



[finding that objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; Gross, 785 F.2d at 1166 ["[A] psychological disorder is not necessarily disabling. There must be a showing of related functional loss."]; Foster v. Bowen, 853 F.2d 483, 489 (6th Cir. 1988) [A mental impairment diagnosis is insufficient, standing alone, to establish entitlement to benefits.].

Again, the undersigned can find no reversible error in this decision. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"]; Clarke v. Bowen, 843 F.2d 271, 272-273 (8th Cir. 1988)["The substantial evidence standard presupposes . . . a zone of choice within which the decision makers can go either way without interference by the Courts"]; Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964) [court scrutinizes the record as a whole to determine whether the conclusions reached are rational]. Therefore, it was not reversible error for the ALJ to fail to include any such limitations in his finding of the Plaintiff's residual functional capacity, or in his hypothetical to the vocational expert at the hearing. Lee v. Sullivan, 945 F.2d 687, 692 (4th Cir. 1991))[ALJ not required to include limitations or restrictions in his hypothetical question that he finds not to be supported by the record].

**Conclusion**

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Considered under this standard, the record contains substantial evidence to support



the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is **ordered** that the decision of the Commissioner is **affirmed**.

**IT IS SO ORDERED**.

_____
Bristow Marchant
United States Magistrate Judge

February 10, 2010

Charleston, South Carolina

**The parties are hereby notified that any right to appeal this Order is governed by Rules 3 and 4 of the Federal Rules of Appellate Procedure.**

